# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

<table>
<tr><td>In the Matter of the Search of<br><br>A BLACK iPHONE, BOOKED AS EVIDENCE ITEM 1B47 OF FBI CASE 245D-SC-3885989;, CURRENTLY LOCATED in FBI evidence storage at 2001 Freedom Way, Roseville, California 95678</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No.   2:25-sw-0244 AC</td></tr>
</table>

**FILED**
Mar 20, 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property (*identify the person or describe the property to be searched and give its location*):

**SEE ATTACHMENT A, attached here and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed (*identify the person or describe the property to be seized*):

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is (*check one or more*):

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm |
| 21 U.S.C. §§ 846, 841(a)(1) | Conspiracy to distribute and possess with intent to distribute controlled substances |
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute controlled substances |
| 18 U.S.C. § 922(a)(1)(A) | Unlawful dealing in firearms |

The application is based on these facts:

**SEE AFFIDAVIT, attached here and incorporated by reference.**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
*Applicant's signature*

Special Agent Nathan Cernat, FBI
*Printed name and title*

Sworn to me and signed telephonically.

Date:   March 20, 2025

*Judge's signature*

City and state:   Sacramento, California

Allison Claire, U.S. Magistrate Judge
*Printed name and title*

1  MICHELLE BECKWITH
   Acting United States Attorney
2  ADRIAN T. KINSELLA
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5
   Attorneys for Plaintiff
6  United States of America

7

8                 IN THE UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11  In the Matter of the Search of:          CASE NO.

12  A BLACK iPHONE, BOOKED AS               AFFIDAVIT IN SUPPORT OF SEARCH
    EVIDENCE ITEM 1B47 OF FBI CASE 245D-              WARRANT
13  SC-3885989; A GRAY TRACK PHONE,
    BOOKED AS EVIDENCE ITEM 1B39 OF FBI
14  CASE 245D-SC-3885989; A GRAY TRACK
    PHONE WITH STICKER BOOKED AS
15  EVIDENCE ITEM 1B40 OF FBI CASE 245D-
    SC-3885989; A ROSE GOLD iPHONE,
16  BOOKED AS EVIDENCE ITEM 1B41 OF FBI
    CASE 245D-SC-3885989; A BLACK
17  iPHONE, BOOKED AS EVIDENCE ITEM
    1B42 OF FBI CASE 245D-SC-3885989;
18  LOCATED IN FBI EVIDENCE STORAGE
    AT 2001 FREEDOM WAY, ROSEVILLE, CA
19  95678.

20

21

22        I, Nathan Cernat, being first duly sworn, hereby depose and state as follows:

23              I.        **INTRODUCTION AND AGENT BACKGROUND**

24        1.       I make this affidavit in support of an application under Rule 41 of the Federal Rules of

25  Criminal Procedure for a search warrant authorizing the examination of property—nine electronic

26  devices, which are currently in law enforcement possession and are further described in attachment A.

27        2.       I am a Special Agent of the United States Department of Justice, Federal Bureau of

28

                                      1

Investigation ("FBI"). I have been an FBI Special Agent since April 2015. As such, I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516. I am currently assigned to the FBI's Sacramento Division, Fairfield Resident Agency, where I work as part of the FBI's Solano County Violent Crime Task Force. In this role, I am responsible for investigating a variety of criminal matters, to include firearms violation, violent criminal enterprises such as street gangs and organized crime.

3. I was trained as an FBI Special Agent at the FBI Academy in Quantico, Virginia. As part of my training, I received extensive instruction in the areas of criminal law, firearms training, rules of evidence, interview techniques, physical surveillance, interviewing witnesses, confidential informants, victims and suspects, writing affidavits and executing search warrants, analyzing phone records obtained from subpoenas, search warrants, pen registers, trap and trace devices, and collecting and processing evidence. In addition, I have received specialized training in the extraction of data from digital devices, to include cellular telephones, as well as specialized training in firearms technology. Throughout my law enforcement career, and as part of my participation in this investigation, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local investigators.

4. During my employment as an FBI Special Agent, I have participated in numerous criminal investigations to include investigations into the illegal trafficking of firearms and drugs. I have also participated in numerous investigations involving the use of federal and state search warrants to collect evidence, including controlled substances, firearms and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances and weapons. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources including physical and electronic surveillance, various types of infiltration (including informants and cooperating sources), pen register and trap and trace devices, telephone tracking devices, mail covers, pole cameras, stationary video recording vehicles, wire intercepts, audio and audio/video recording devices.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show

2

1  merely that there is sufficient probable cause for the requested warrant and does not set forth all of my

2  knowledge about this matter.

3  **II.    IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

4  6.    The property to be searched are nine electronic devices seized from CARLOS

5  HIGUERA-ALDANA ("HIGUERA-ALDANA"), JEREMIAH SALANOA ("SALANOA") and

6  DOROTEO SUASTEGUI ("SUASTEGUI") on February 27, 2025, pursuant to federal search warrants

7  executed that day at places connected to HIGUERA-ALDANA, SALANOA, and SUASTEGUI. These

8  devices, collectively referred to as the "**SUBJECT DEVICES**," are further described as follows:

- A black iPhone with no case, booked as evidence item 1B14 of FBI case 245D-SC-3885989 and seized from HIGUERA-ALDANA's person on February 27, 2025, pursuant to a federal search warrant.

- An iPhone with a clear case and a "Mermelada" sticker on it, booked as evidence item 1B15 of FBI case 245D-SC-3885989 and seized from HIGUERA-ALDANA's person on February 27, 2025, pursuant to a federal search warrant.

- A black iPhone, booked as evidence item 1B47 of FBI case 245D-SC-3885989 and seized from HIGUERA-ALDANA's residence on February 27, 2025, pursuant to a federal search warrant.

- An iPhone in Brown Case, booked as evidence item 1B16 of FBI case 245D-SC-3885989 and seized from SUASTEGUI's person on February 27, 2025, pursuant to a federal search warrant.

- A blue Motorola phone, booked as evidence item 1B38 of FBI case 245D-SC-3885989 and seized from SALANOA's residence on February 27, 2025, pursuant to a federal search warrant.

- A gray Track Phone, booked as evidence item 1B39 of FBI case 245D-SC-3885989 and seized from SALANOA's residence on February 27, 2025, pursuant to a federal search warrant.

- A gray Track Phone with sticker, booked as evidence item 1B40 of FBI case 245D-SC-3885989 and seized from SALANOA's residence on February 27, 2025, pursuant to a

federal search warrant.

- A rose gold iPhone, booked as evidence item 1B41 of FBI case 245D-SC-3885989 and seized from SALANOA's residence on February 27, 2025, pursuant to a federal search warrant.

- A black iPhone, booked as evidence item 1B42 of FBI case 245D-SC-3885989 and seized from SALANOA's residence on February 27, 2025, pursuant to a federal search warrant.

The **SUBJECT DEVICES** are currently located in FBI evidence storage at 2001 Freedom Way, Roseville, California 95678.

7.     This warrant would authorize the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B.

8.     The **SUBJECT DEVICES** are currently in the lawful possession of the FBI.  The FBI seized the **SUBJECT DEVICES** pursuant to federal search warrants served on February 27, 2025. Based on my training and experience, I know that the **SUBJECT DEVICES** have been stored in a manner in which the contents are, to the extent material to this investigation, remain in substantially the same state as it was when the FBI first took possession of the **SUBJECT DEVICES**.

### III.     PROBABLE CAUSE

9.     The FBI is investigating LEO ALONSO-MEDINA, CARLOS HIGUERA-ALDANA, JEREMIAH SALANOA, DOROTEO SUASTEGUI, DAVION MORGAN and other members of the Sureno street gang, Vallejo Subset "Brown Brotherhood" commonly referred to as BBH, for suspected firearms and controlled substance trafficking in the Eastern District of California.

10.     There are at least two active Sureno gangs in the city of Vallejo.  They are Brown Brotherhood (BBH) and Brown Crowd Locos (BCL).  Many BBH and BCL members claim Westside Vallejo (WSV), meaning, they claim the west side of the city as their territory or area of operation. Whereas, a rival gang, Nortenos, claim East Side Vallejo (ESV) as their territory.

11.     BBH is one of the oldest and largest criminal street gangs within the city of Vallejo. BBH was first noticed by the Vallejo Police Department in 1991.  BBH is comprised primarily of Hispanic males although individuals of other races are accepted.  BBH is a Sureno criminal street gang

as they wear the color blue, utilize the number 13, and answer to the Mexican Mafia (La Eme).  BBH has a "click" or group within the gang called West Side Pee Wees (WSP).  This click was created to show respect to Israel Balderas (Rivera) (aka Pee Wee), a BBH gang member who was sentenced to prison for a gang related homicide in 2007.  BBH members will get tattoos and tag their belongings and other property with things such as: SUR, 13, XIII, X3, 3 dots, South Sider, West Side Vallejo, WSV, West Side, WS, WSP, 228, and BBH.  BBH gang members, BCL gang members, and other Surenos from the surrounding cities and counties have been seen cooperating and socializing together.

12.    Primary criminal activities of Sureno gang members have included murder, robbery, extortion, drug trafficking, firearms trafficking, burglary, stolen vehicles, and victim/witness intimidation.  These criminal acts, in association with, or at the direction of older gang members (OG's), are meant to instill fear and intimidation in rival gang members, as well as members of the community who live and work in the neighborhoods controlled by the gang. Solano County law enforcement agencies including the Vallejo Police Department and the Solano County Violent Crime Task Force (SCVCTF) has conducted numerous investigations surrounding BBH and BBH gang members. These investigations have led to arrests and/or convictions of various members for crimes including but not limited to drug sales, felony assaults, firearms trafficking, firearm possession and murder.

13.    SCVCTF is currently working with a Confidential Human Source[1] ("CHS"). The CHS has provided information on various BBH gang members and has conducted multiple controlled firearm and/or drug purchases from various BBH members. This investigation began in February 2024 and has been ongoing since. The narcotics and firearms evidence obtained by the FBI through these controlled purchases served as basis for the probable cause statement used to obtain federal arrest warrants for HIGUERA-ALDANA, SALANOA, and SUASTEGUI, as well as federal search warrants of their persons, residences and vehicles.

---

[1]    The CHS started cooperating with the FBI in order to avoid prosecution from a state arrest. The CHS has since fulfilled his/her commitment to law enforcement and continued to cooperate with the FBI for monetary compensation.  The CHS has requested the FBI's assistance with his/her immigration status in the US should it be needed in the future.  No assistance with the CHS' immigration status has been provided to the CHS thus far.  The CHS has no criminal convictions.  The CHS has been arrested, but not convicted, for the following offenses: possession of a concealed firearm in a vehicle.  The CHS has been an informant for the FBI since August 2022 and has been proven to be a reliable CHS thus far. The CHS' reporting has been proven to be truthful and has been independently verified by FBI agents.

///

***Subject Devices Seized from HIGUERA-ALDANA's Person and Residence on February 27, 2025***

14.     Since July 16, 2024, the CHS conducted three controlled purchases of methamphetamine from HIGUERA-ALDANA at the direction of the FBI. These controlled purchase operations have been surveilled by undercover law enforcement and the meetings between HIGUERA-ALDANA and the CHS were surreptitiously recorded. The CHS communicated with HIGUERA-ALDANA via text messages and Instagram direct messaging to coordinate the details of the transactions such as the day, the time and the meeting locations, as well as the quantity and the price of methamphetamine. HIGUERA-ALDANA provided several phone numbers to the CHS over the course of the investigation. The last controlled purchase of one pound of methamphetamine from HIGUERA-ALDANA took place on January 24, 2025. HIGUERA-ALDANA communicated with the CHS via text messages from telephone number 707-853-7958 to coordinate the details of the transaction.

15.     On February 24, 2025, this Court authorized a Criminal Complaint (2:25-mj-0039 JDP) charging HIGUERA-ALDANA with violations of 21 U.S.C. § 841(a)(1) - Possession with intent to distribute and distribution of controlled substances. The Court issued an arrest warrant for HIGUERA-ALDANA, as well as search warrants for HIGUERA-ALDANA's person and HIGUERA-ALDANA's residence.

16.     On February 27, 2025, law enforcement executed the federal arrest and search warrants of HIGUERA-ALDANA, his residence located at 1350 W F St., Dixon, CA 95620 ("HIGUERA-ALDANA's Residence") and his vehicles. Law enforcement arrested HIGUERA-ALDANA and searched pursuant to the warrants. During the search, agents located two cell phones on HIGUERA-ALDANA's person at the time of his arrest:  a black iPhone with no case, booked as evidence item 1B14 of FBI case 245D-SC-3885989, and an iPhone with a clear case and a "Mermelada" sticker on it, booked as evidence item 1B15 of FBI case 245D-SC-3885989. The two cell phones were seized pursuant to the search warrant.

17.     During the execution of the search warrant of HIGUERA-ALDANA's Residence, agents located a black iPhone on the couch in the living room of the residence. TFO Andrew Shaw placed a call

to 707-853-7958, which was the phone number HIGUERA-ALDANA used to communicate with the CHS during the last controlled purchase of methamphetamine. TFO Shaw and SA Ceccon observed the black iPhone ringing. The black iPhone was seized and booked as evidence item 1B47 of FBI case 245D-SC-3885989.

18.    In addition to the cell phones mentioned above, agents seized the following items of evidentiary value from HIGUERA-ALDANA's Residence and vehicles:

a)    A Ruger P89 handgun with serial number: 314-04751.

b)    A Glock 27 .40 caliber handgun with serial number: XRE588.

c)    A Glock 48 handgun with serial number: BWV199.

d)    A Glock 27 .40 caliber handgun with serial number BFFW617.

e)    A Kimber handgun with serial number K901031.

f)    A clear plastic bag containing white powdery substance, suspected to be cocaine. The total weight of the suspected drugs including evidence packaging was 28.2 grams.

g)    A clear plastic bag containing white powdery substance, suspected to be cocaine. The total weight of the suspected drugs including evidence packaging was 45.8 grams.

h)    A clear plastic bag containing white powdery substance, suspected to be cocaine. The total weight of the suspected drugs including evidence packaging was 284.6 grams.

i)    A clear plastic bag containing white powdery substance, suspected to be cocaine. The total weight of the suspected drugs including evidence packaging was 148.2 grams.

j)    A clear plastic bag containing blue M30 pills, suspected to be fentanyl. The total weight of the suspected drugs including evidence packaging was 108.5 grams.

k)    A clear plastic bag containing blue pills and blue powder substance, suspected to be fentanyl. The total weight of the suspected drugs including evidence packaging was 55.6 grams.

l)    A clear plastic bag containing clear crystal-like substance, suspected to be methamphetamine. The total weight of the suspected drugs including evidence packaging was 3188.3 grams.

m)    A clear plastic bag containing clear crystal-like substance, suspected to be methamphetamine. The total weight of the suspected drugs including evidence packaging was

5259 grams.

n)    Approximately $8964 in U.S. currency.



*Picture of evidence items seized from HIGUERA-ALDANA on February 27, 2025*

19.    Although the suspected narcotics seized from HIGUERA-ALDANA have not been tested yet, agents have visually inspected the drugs and concluded that the white powdery substance is consistent with the size, shape, and color of actual cocaine, the blue M30 pills are consistent with the size, shape, and color of actual M30 pills, which commonly contain fentanyl, and the clear crystal-like substance is consistent with the size, shape, and color of actual methamphetamine.

**Subject Devices Seized from SALANOA's Residence**.

20.    Since April 16, 2024, at the direction of the FBI, the CHS conducted three separate controlled buys of M30 pills and a controlled buy of one pound of methamphetamine and a firearm from SALANOA. These controlled purchase operations have been surveilled by undercover law enforcement and the meetings between SALANOA and the CHS were surreptitiously recorded. The CHS communicated with SALANOA via text messages and Instagram direct messaging to coordinate the details of the transactions such as the day, the time and the meeting locations, as well as the quantity and the price of the narcotics and firearm. The last controlled purchase of 4000 M30 pills from SALANOA took place on November 19, 2025. To coordinate the details of that drug deal, the CHS communicated with SALANOA via text messages at telephone number 505-512-4722.

21.    On February 24, 2025, this Court authorized a Criminal Complaint charging SALANOA

8

with violations of 21 U.S.C. § 841(a)(1) – Possession with intent to distribute and distribution of controlled substances. The Court issued an arrest warrant for SALANOA, as well as search warrants for SALANOA's person, and SALANOA's residence.

22.     On February 27, 2025, law enforcement executed the federal arrest and search warrants of SALANOA, his residence located at 616 Grant Street, Vallejo, CA ("SALANOA's Residence") and his vehicles. Agents arrested SALANOA at SALANOA' Residence pursuant to his arrest warrant. Law enforcement conducted a search of SALANOA' Residence pursuant to the search warrant. SALANOA's girlfriend, Estrella Giselle Sauri SILVA ("SILVA"), was the only other individual present at SALANOA's Residence at the time agents executed the search warrants. Agents temporarily detained SILVA and searched pursuant to the search warrant (agents released SILVA at the conclusion of the search). Agents located and seized the following items of evidentiary value from SALANOA's Residence:

    a)     A Smith and Wesson handgun with serial number: FWV4505.

    b)     A digital scale.

    c)     A Stag Arms AR-15 rifle with serial number 131714.

    d)     Draco AK pistol with unknown serial number.

    e)     $2200 in U.S. currency.

    f)     A clear plastic bag containing approximately 60 M30 pills, suspected to be fentanyl. The total weight of the suspected drugs including evidence packaging was 41.7 grams.

    g)     66 clear plastic bags containing M30 pills, suspected to be fentanyl. The total weight of the suspected drugs including evidence packaging was 10,742 grams.

23.     Although the suspected narcotics seized from SALANOA have not been tested yet, agents have visually inspected the drugs and concluded that the blue M30 pills seized from SALANOA's Residence are consistent with the size, shape, and color of actual M30 pills, which commonly contain fentanyl.

24.     In addition to the evidence items listed above, law enforcement located five cell phones on a TV stand in the living room of SALANOA's Residence:

    a)     A blue Motorola phone, booked as evidence item 1B38 of FBI case 245D-SC-3885989.

b)      A gray Track Phone, booked as evidence item 1B39 of FBI case 245D-SC-3885989.

c)      A gray Track Phone with sticker, booked as evidence item 1B40 of FBI case 245D-SC-3885989.

d)      A rose gold iPhone, booked as evidence item 1B41 of FBI case 245D-SC-3885989.

e)      A black iPhone, booked as evidence item 1B42 of FBI case 245D-SC-3885989.

25.      During the execution of the search warrant on SALANOA's Residence law enforcement placed a call to SALANOA's known cell phone number (505-512-4722) and none of the five cell phones listed above were observed ringing. It is worth mentioning that only a gray Track Phone was powered on. The rest of the listed cell phones were powered off at the time of the search. The FBI seized all five phones pursuant to the search warrant. Based on my training and experience, I know that people who are involved in the illegal distribution of narcotics and firearms are often using multiple phones at the same time in efforts to evade law enforcement.



*Picture of evidence items seized from SALANOA's residence*

**Subject Devices Seized from SUASTEGUI**

26.      Since March 12, 2024, at the direction of the FBI, the CHS conducted three separate controlled buys of firearms and methamphetamine from SUASTEGUI. These controlled purchase operations have been surveilled by undercover law enforcement and the meetings between SUASTEGUI and the CHS were surreptitiously recorded. The CHS communicated with SUASTEGUI via text

messages to coordinate the details of the transactions such as the day, the time and the meeting locations, as well as the type of firearms and narcotics and their prices. The last controlled purchase of two firearms and approximately 120 grams of methamphetamine from SUASTEGUI took place on January 8, 2025. The CHS communicated with SUASTEGUI via text messages at telephone number 707-342-0356 to coordinate the details of the transaction.

27.    On February 24, 2025, this Court authorized a Criminal Complaint charging SUASTEGUI with violations of 18 U.S.C. § 922(a)(1)(A) – Unlawful dealing in firearms. The Court issued an arrest warrant for SUASTEGUI, as well as search warrants for SUASTEGUI's person, and SUASTEGUI's residence.

28.    On February 27, 2025, law enforcement executed the federal arrest and search warrants of SUASTEGUI, his residence located at 101 Hilborn Street, Apt. 9, Vallejo, CA ("SUASTEGUI's Residence") and his vehicles. SUASTEGUI was arrested and searched pursuant to his arrest and search warrants. Law enforcement located an iPhone in a Brown Case on SUASTEGUI's person. The FBI seized the phone and booked it as evidence item 1B16 of FBI case 245D-SC-3885989.

29.    Agents also searched SUASTEGUI's Residence and vehicles pursuant to the search warrants. Agents located the following items of evidentiary value in SALANOA's Residence and vehicles:

a)    Two clear plastic bags containing white powdery substance, suspected to be cocaine. The total weight of the suspected narcotics in their original packaging was approximately 18.9 grams.

b)    One plastic bag containing an off-white crystal-like substance, suspected to be methamphetamine. The total weight of the suspected narcotics in their original packaging was approximately 9 grams.

c)    24 dime size clear plastic bags: 8 bags contained off-white crystal-like substance, suspected to be methamphetamine. The gross weight of the 8 bags in their original packaging was approximately 6.6 grams; 16 plastic bags containing white powdery substance, suspected to be cocaine. The gross weight of the 16 plastic bags in their original packaging was approximately 9.8 grams.

d)    Six clear plastic bags containing off-white crystal-like substance, suspected to be

methamphetamine. The approximate total weight of the six bags in their original packaging was 180.5 grams.

e)    Miscellaneous ammunition.

f)    Miscellaneous gun parts.

g)    Nine dime size clear plastic bags: 2 bags contained off-white crystal-like substance, suspected to be methamphetamine. The total weight of the 2 bags in their original packaging was approximately 1.8 grams; 7 bags containing white powdery substance, suspected to be cocaine. The gross weight of the 7 plastic bags in their original packaging was approximately 4.5 grams.

h)    Glock 19 handgun with serial number: SGZ367.

i)    Miscellaneous gun parts.

30.    Although the suspected narcotics seized from SUASTEGUI have not been tested yet, agents have visually inspected the drugs and concluded that the white powdery substance is consistent with the size, shape and color of actual cocaine and the off-white crystal-like substance is consistent with the size, shape, and color of actual methamphetamine.

**Training and Experience Regarding Firearms and Narcotics**

31.    I know that individuals who are involved in the illegal possession and distribution of narcotics and firearms often use cellular telephones to communicate with one another, either by voice or text message. The information stored in a mobile telephone used by illegal narcotics and firearm traffickers often contains evidence of their criminal activities. Cellular telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user. The text message history of a cellular telephone can contain evidence of illegal drugs and/or firearm possession, trafficking and/or manufacturing because it shows the communications or planned communications of a narcotics or firearm possessor, trafficker, and/or manufacturer and the telephone numbers of those with whom the illegal narcotics or firearm possessor, trafficker, and/or manufacturer communicated or intended to communicate.

32.    Illegal narcotics and firearms traffickers sometimes leave voice messages for each other, and this is evidence both of their mutual association and possibly their joint criminal activity. Cellular telephones can also contain other user-entered data files such as "to-do" lists, which can provide

evidence of crime when used by an illegal narcotics or firearms traffickers. Cellular telephones can also contain photographic data files, which can be evidence of criminal activity if the user who was in possession of narcotics or firearms took pictures of evidence of crime. Cellular telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.

33.     Based on my training and experience, I know that people who are involved in the illegal possession and trafficking of narcotics and firearms often maintain photographs or videos of their narcotics, firearms and ammunition on their cellular telephones, including photographs or videos of the possessor holding narcotics of firearms.

34.     I know that individuals involved in the illegal distribution of narcotics and firearms tend to maintain a continual chain of communication with suppliers, lookouts and co-conspirators to facilitate their criminal activities. I also know that these communications are primarily conducted by cellular telephones. I know that people who negotiate the sale of narcotics and /or firearms will often use cell phones to contact co-conspirators to obtain additional quantities of firearms and/or narcotics. I also know that photos of narcotics, firearms and currency are often stored on such devices. Cellular phones can also supply historical information about the dates, times, duration, number, destination, and location of telephone calls, messages, photographs, video, audio, and other information processed or stored by the cellular telephone.

35.     It has been my experience that people engaged in criminal activities utilize cellular telephones to maintain contact, either by telephone calls and/or text messaging, with close associates and people they trust, to include associates in the criminal activities, and that they carry these cellular telephones with them during the course of their criminal activities. Moreover, it has been my experience that people engaged in such criminal activities utilize these cellular telephones to take photographs and videos of themselves, their criminal associates, and other items related to their criminal activities, in some cases from the proceeds from their criminal activities. Relating to the ever-evolving level of cellular telephone technology, particularly increased storage capacity, through my training and experience, I know that cellular telephones can regularly store contacts, call logs, text messages, multimedia files, voicemail messages, and location/GPS data months and in some cases years from the

1   date of the phone's activation.

2       36.     Those who are involved in the illegal narcotics and firearms trafficking often,

3   intentionally or unintentionally, retain paperwork and evidence indicating the source of the narcotics

4   and/or firearms whether it be by purchase, theft, or other means.

5                       **IV.     TECHNICAL TERMS**

6       37.     Based on my training and experience, I use the following technical terms to convey the

7   following meanings:

8       a)     Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is

9           a handheld wireless device used for voice and data communication through radio signals.  These

10          telephones send signals through networks of transmitter/receivers, enabling communication with

11          other wireless telephones or traditional "land line" telephones.  A wireless telephone usually

12          contains a "call log," which records the telephone number, date, and time of calls made to and

13          from the phone.  In addition to enabling voice communications, wireless telephones offer a broad

14          range of capabilities.  These capabilities include: storing names and phone numbers in electronic

15          "address books;" sending, receiving, and storing text messages and e-mail; taking, sending,

16          receiving, and storing still photographs and moving video; storing and playing back audio files;

17          storing dates, appointments, and other information on personal calendars; and accessing and

18          downloading information from the Internet.  Wireless telephones may also include global

19          positioning system ("GPS") technology for determining the location of the device.

20      b)     Digital camera:  A digital camera is a camera that records pictures as digital picture files,

21          rather than by using photographic film.  Digital cameras use a variety of fixed and removable

22          storage media to store their recorded images.  Images can usually be retrieved by connecting the

23          camera to a computer or by connecting the removable storage medium to a separate reader.

24          Removable storage media include various types of flash memory cards or miniature hard drives.

25          Most digital cameras also include a screen for viewing the stored images.  This storage media

26          can contain any digital data, including data unrelated to photographs or videos.

27      c)     Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld

28          digital storage device designed primarily to store and play audio, video, or photographic files.

14

However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d)      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e)      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f)      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric

15

address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

g)      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

38.      Based on my training, experience, and research, I know that the **SUBJECT DEVICES** have capabilities that allow it to serve as serve as a wireless telephone, digital camera, GPS navigation device, and PDA, and a means to access the internet.  I also know that the **SUBJECT DEVICES** are capable of downloading applications such as Instagram and other social media applications which may be used to send messages.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## V.      ELECTRONIC STORAGE AND FORENSIC ANALYSIS

39.      Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

40.      Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the **SUBJECT DEVICES** were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICES** because:

a)      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph

that has been deleted from a word processing file).

b)      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c)      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d)      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e)      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

41.    <u>Nature of examination.</u>  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

42.    <u>Manner of execution.</u>  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

///

///

///

## VI.    AUTHORIZATION REQUEST

43.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICES** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/
_____
Nathan Cernat
Special Agent
FBI

Subscribed and sworn to via telephone me on:    March 20, 2025

*allison Claire*
_____
HONORABLE ALLISON CLAIRE
U.S. MAGISTRATE JUDGE

*/s/ Jason Hitt*
_____
Approved as to form by AUSA Jason Hitt

## ATTACHMENT A

The property to be searched are the electronic devices seized from CARLOS HIGUERA-ALDANA, JEREMIAH SALANOA and DOROTEO SUASTEGUI on February 27, 2025, pursuant to federal search warrants. These devices are collectively referred to as the "**SUBJECT DEVICES**" and are further described as follows:

- Black iPhone with no case, booked as Evidence item 1B14 of FBI case 245D-SC-3885989.

- iPhone with a clear case, with a "Mermelada" sticker on it, booked as Evidence item 1B15 of FBI case 245D-SC-3885989.

- Black iPhone, booked as Evidence item 1B47 of FBI case 245D-SC-3885989.

- Apple iPhone in Brown Case, booked as Evidence item 1B16 of FBI case 245D-SC-3885989.

- Blue Motorola, booked as Evidence item 1B38 of FBI case 245D-SC-3885989.

- Gray Track Phone, booked as Evidence item 1B39 of FBI case 245D-SC-3885989.

- Gray Track Phone with sticker, booked as Evidence item 1B40 of FBI case 245D-SC-3885989.

- Rose Gold iPhone, booked as Evidence item 1B41 of FBI case 245D-SC-3885989.

- Black iPhone, booked as Evidence item 1B42 of FBI case 245D-SC-3885989.

This warrant authorizes the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the **SUBJECT DEVICES** described in Attachment A that relate to the following violations:

- 18 U.S.C. § 922(g)(1) – Felon in possession of a firearm
- 21 U.S.C. §§ 841 and 846 - Conspiracy to distribute and possession with intent to distribute controlled substances;
- 21 U.S.C. § 841(a)(1) – Possession with intent to distribute controlled substances; and
- 18 U.S.C. § 922(a)(1)(A) – Unlawful dealing in firearms;

collectively referred to here as the "Target Offences," involving CARLOS HIGUERA-ALDANA, JEREMIAH SALANOA and DOROTEO SUASTEGUI from February 1, 2024, to the date of the takedown on February 27, 2025, including:

a.      Records of calls and other communications on the **SUBJECT DEVICES**, including but not limited to call logs, audio files, text messages, multi-media messages, emails, and private chat logs;

b.      Records relating to contact lists, address books, telephone notes, appointment books, task lists, social media user information, and calendars;

c.      Records relating to narcotics, firearm and/or ammunition possession, purchase, sale, and/or use;

d.      Records of any of the Target Subjects associating with the Sureno Brown Brotherhood criminal street gang, one another, or other co-conspirators, or that are otherwise helpful to identify those individuals that committed or are committing the Target Offenses;

e.      Records relating to the location of Target Subjects or other co-conspirators at the times they are involved in planning, executing or covering up the commission of the Target Offense, or are in possession of narcotics, firearms, or ammunition

f.      Records of the times the **SUBJECT DEVICES** was used;

g.      Records relating to Global Positioning Satellite (GPS) entries, Internet Protocol Connections, and location entries, to include Cell Tower and Wi-Fi entries;

h.      Evidence indicating how and when the **SUBJECT DEVICES** was accessed or used to determine the chronological context of access, use, and events relating to the Target Offenses and to the user;

i.      Evidence indicating the **SUBJECT DEVICES'** user's state of mind as it relates to the Target Offenses; and

      j.  Contextual information necessary to understand the evidence described in this attachment.

    2.    Evidence of user attribution showing who used or owned the **SUBJECT DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat" or instant messaging logs, photographs, images, videos, audio files, and correspondence.

    3.    Passwords, encryption keys, and other access devices that may be necessary to access the **SUBJECT DEVICES**;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) <br> A BLACK iPHONE, BOOKED AS EVIDENCE ) <br> ITEM 1B47 OF FBI CASE 245D-SC-3885989; ) <br> CURRENTLY LOCATED in FBI evidence storage at ) <br> 2001 Freedom Way, Roseville, California 95678 ) <br> ) | Case No.    2:25-sw-0244 AC |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____

*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached here and incorporated by reference.**

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached here and incorporated by reference.**

        **YOU ARE COMMANDED** to execute this warrant on or before _____April 3, 2025_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

        ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
        ☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    March 20, 2025, at 12:47 p.m.    _____
                                                                                    *Judge's signature*

City and state:    Sacramento, California    _____
                                                        Allison Claire, U.S. Magistrate Judge
                                                                *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
                  Signature of Judge                                                     Date

## ATTACHMENT A

The property to be searched are the electronic devices seized from CARLOS HIGUERA-ALDANA, JEREMIAH SALANOA and DOROTEO SUASTEGUI on February 27, 2025, pursuant to federal search warrants. These devices are collectively referred to as the "**SUBJECT DEVICES**" and are further described as follows:

- Black iPhone with no case, booked as Evidence item 1B14 of FBI case 245D-SC-3885989.

- iPhone with a clear case, with a "Mermelada" sticker on it, booked as Evidence item 1B15 of FBI case 245D-SC-3885989.

- Black iPhone, booked as Evidence item 1B47 of FBI case 245D-SC-3885989.

- Apple iPhone in Brown Case, booked as Evidence item 1B16 of FBI case 245D-SC-3885989.

- Blue Motorola, booked as Evidence item 1B38 of FBI case 245D-SC-3885989.

- Gray Track Phone, booked as Evidence item 1B39 of FBI case 245D-SC-3885989.

- Gray Track Phone with sticker, booked as Evidence item 1B40 of FBI case 245D-SC-3885989.

- Rose Gold iPhone, booked as Evidence item 1B41 of FBI case 245D-SC-3885989.

- Black iPhone, booked as Evidence item 1B42 of FBI case 245D-SC-3885989.

This warrant authorizes the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.      All records on the **SUBJECT DEVICES** described in Attachment A that relate to the following violations:

-   18 U.S.C. § 922(g)(1) – Felon in possession of a firearm
-   21 U.S.C. §§ 841 and 846 - Conspiracy to distribute and possession with intent to distribute controlled substances;
-   21 U.S.C. § 841(a)(1) – Possession with intent to distribute controlled substances; and
-   18 U.S.C. § 922(a)(1)(A) – Unlawful dealing in firearms;

collectively referred to here as the "Target Offences," involving CARLOS HIGUERA-ALDANA, JEREMIAH SALANOA and DOROTEO SUASTEGUI from February 1, 2024, to the date of the takedown on February 27, 2025, including:

a.   Records of calls and other communications on the **SUBJECT DEVICES**, including but not limited to call logs, audio files, text messages, multi-media messages, emails, and private chat logs;

b.   Records relating to contact lists, address books, telephone notes, appointment books, task lists, social media user information, and calendars;

c.   Records relating to narcotics, firearm and/or ammunition possession, purchase, sale, and/or use;

d.   Records of any of the Target Subjects associating with the Sureno Brown Brotherhood criminal street gang, one another, or other co-conspirators, or that are otherwise helpful to identify those individuals that committed or are committing the Target Offenses;

e.   Records relating to the location of Target Subjects or other co-conspirators at the times they are involved in planning, executing or covering up the commission of the Target Offense, or are in possession of narcotics, firearms, or ammunition

f.   Records of the times the **SUBJECT DEVICES** was used;

g.   Records relating to Global Positioning Satellite (GPS) entries, Internet Protocol Connections, and location entries, to include Cell Tower and Wi-Fi entries;

h.   Evidence indicating how and when the **SUBJECT DEVICES** was accessed or used to determine the chronological context of access, use, and events relating to the Target Offenses and to the user;

i.   Evidence indicating the **SUBJECT DEVICES'** user's state of mind as it relates to the Target Offenses; and

        j.   Contextual information necessary to understand the evidence described in this attachment.

        2.     Evidence of user attribution showing who used or owned the **SUBJECT DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat" or instant messaging logs, photographs, images, videos, audio files, and correspondence.

        3.     Passwords, encryption keys, and other access devices that may be necessary to access the **SUBJECT DEVICES**;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.